# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| UNITED STATES OF AMERICA, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) Case No. CR-14-247-D |
| RAYMOND TURNER, *et al.*, | ) |
| Defendants. | ) |

## **O R D E R**

Defendant Raymond Turner filed a motion [Doc. No. 97] requesting a hearing to determine the admissibility of any statements he made to law enforcement. Defendant contends in his motion that the statements were not made voluntarily, but does not identify the statements at issue or when and where the statements were made. The government filed its response [Doc. No. 125] and identified four times during which Defendant spoke to law enforcement. Three interviews took place at IBC Bank in Oklahoma City, Oklahoma, where certain bank robberies charged in this action occurred. Defendant was a former employee of the bank and he was interviewed in that capacity. Defendant subsequently provided a fourth statement to agents of the Federal Bureau of Investigation (FBI) at their Oklahoma City offices after an agent contacted Defendant and he voluntarily agreed to speak to the FBI.

On March 11, 2015, the Court conducted a hearing on this matter pursuant to *Jackson v. Denno*, 378 U.S. 368 (1964), and the government presented evidence as to the voluntariness of Defendant's statements. Defendant did not present any evidence.

Agent Ingrid Arbuthnot-Stohl testified that Defendant was interviewed three times as a witness in his capacity as a bank employee. She testified that Defendant became a suspect when he

showed up at the apartment of co-defendant Chantell Evans while police were conducting a search of that apartment.

On June 24, 2014, Agent Arbuthnot-Stohl contacted Defendant and asked him to come to the FBI's offices to speak with her about the bank robberies at the IBC Bank. When Defendant arrived, Agent Arbuthnot-Stohl met him in the reception area and took him to an interview room. Agent Samuels was also present during the interview. The interview room is approximately 10' x 12' in size and is routinely used for interviews of both suspects and witnesses. During the interview, Defendant sat in a chair closest to the exit.

Before proceeding with the interview, the agents advised Defendant of his *Miranda*[1] rights and Defendant signed an Advice of Rights form which the government introduced at the hearing as Government Exhibit 1. Agent Arbuthnot-Stohl testified that Defendant stated he understood the Advice of Rights form, signed it and consented to the interview. The form is not dated, but Agent Arbuthnot-Stohl testified that contemporaneous notes of the interview reflect that Defendant signed the form prior to providing any statements. Defendant was told he was free to leave at any time during the interview.

The interview lasted no longer than thirty minutes. Agent Arbuthnot-Stohl testified that at the time of the interview, Defendant was twenty-two years old. She further testified that Defendant did not appear to be suffering from any mental illness or under the influence of any drugs.

The agents discussed with Defendant matters relating to one of the robberies charged in this case that occurred on June 19, 2014, and persons suspected in that robbery, including co-defendant Deaunte Shyton Cobb, Defendant's half brother. Defendant did not admit his own involvement in

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

2

the robbery. Agent Arbuthnot-Stohl testified that Defendant became uncomfortable with the interview during a line of questioning about Cobb's criminal history. Defendant ended the interview at that time and left the FBI offices.

Under *Jackson v. Denno*, when a defendant timely objects to the admission of an incriminating statement, he must receive a hearing outside the presence of the jury to determine "both the underlying factual issues and the voluntariness of his confession." *Id.*, 378 U.S. at 380. The burden is on the government to prove by a preponderance of the evidence that the statements were voluntary. *United States v. Pettigrew*, 468 F.3d 626, 633 (10th Cir.2006).

"A defendant's confession is involuntary if the government's conduct causes the defendant's will to be overborne and 'his capacity for self-determination critically impaired.'" *United States v. McCullah*, 76 F.3d 1087, 1101 (10th Cir.1996) (*quoting Schneckloth v. Bustamonte*, 412 U.S. 218, 225–26 (1973)). "In determining whether the defendant's will was overborne in a particular case, the court examines 'the totality of all the surrounding circumstances – both the characteristics of the accused and the details of the interrogation.'" *Id.* (*quoting Schneckloth*, 412 U.S. at 226). Relevant factors "include the age, intelligence, and education of the suspect; the length of the detention and questioning; the use or threat of physical punishment; whether *Miranda* safeguards were administered; the accused's physical and mental characteristics; and the location of the interrogation." *United States v. Perdue*, 8 F.3d 1455, 1466 (10th Cir. 1993). *See also* 18 U.S.C. § 3501(b) (listing factors to be considered). In addition, the court must "consider the conduct of the police officers." *Id.* In applying the "totality of the circumstances" test the Tenth Circuit has explained that:

> The central consideration in determining whether a confession has been coerced always involves this question: did the governmental conduct complained of bring

> about a confession not freely self-determined? Incriminating statements obtained by government acts, threats, or promises that permit the defendant's will to be overborne are coerced confessions running afoul of the Fifth Amendment.

*Clanton v. Cooper*, 129 F.3d 1147, 1158 (10th Cir. 1997) (*quoting Griffin v. Strong*, 983 F.2d 1540, 1543 (10th Cir. 1993)).

Having conducted the hearing requested by Defendant, the Court finds that the statements Defendant made to FBI agents during the course of the interview on June 24, 2014, were voluntary. Prior to making any statements, agents advised Defendant of his *Miranda* rights. Defendant understood those rights and signed a form acknowledging waiver of the same. He came to the interview of his own volition, was told he could leave at any time and when he was no longer comfortable talking with the agents, the interview ended and Defendant left.

The government has demonstrated by a preponderance of the evidence that Defendant's statements were voluntary. Defendant has offered no rebuttal evidence to show the FBI agents coerced the statements from him or provided any other evidence to demonstrate that his will was overborne. Under the totality of the circumstances presented by the evidence, the Court finds Defendant's statements were freely and voluntarily made.

IT IS THEREFORE ORDERED that Defendant Turner's statements made on June 24, 2014, are voluntary and admissible.

IT IS SO ORDERED this 23rd day of March, 2015.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE